**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CEF ENERGIA, B.V., *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 19-cv-3443 (KBJ) |
| | ) | |
| ITALIAN REPUBLIC, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION GRANTING**
**RESPONDENT'S MOTION TO STAY**

Petitioners CEF Energia, B.V. ("CEF Energia"), Greentech Energy Systems A/S (now known as Athena Investments A/S) ("Greentech"), NovEnergia General Partner S.A. (acting as liquidator of NovEnergia II Energy & Environment (SCA) SICAR) ("NEE"), and NovEnergia II Italian Portfolio ("NIP") (collectively, "Petitioners") are seeking to enforce two arbitral awards against the Italian Republic ("Italy" or "Respondent").  (*See* Pet. to Confirm Foreign Arbitral Award ("CEF Pet."), Case No. 19-cv-3443, ECF No. 1-1, at 1; Pet. to Confirm Foreign Arbitral Award ("Greentech Pet."), Case No. 19-cv-3444, ECF No. 1-1, at 2.)[1]  Petitioners are companies that are incorporated in various European countries, and they engaged in two arbitrations with Italy under the Rules of Arbitration of the Arbitration Institute of the Stockholm Chamber of Commerce ("Stockholm Rules").  (*Id.*)  After Petitioners prevailed, Italy

---

[1] Petitioners initially filed two separate cases that have been consolidated in this Court.  When this Memorandum Opinion cites to a filing without listing a case number, the document was filed in the consolidated case—civil case number 19-cv-3443.  Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

sought to set aside, or annul, the awards in the Svea Court of Appeal in Sweden (the "Svea Court"), and the Svea Court issued orders that prohibit the enforcement of the awards pending resolution of the challenge. (*See* Pet'rs' Response to Mot. to Dismiss ("Pet'rs' Response"), ECF No. 35, at 15–16.)

Before this Court at present are Italy's motions to dismiss the Petitioners' bid to have *this* Court enforce the arbitration awards. (*See* Resp't's Mem. in Support of Mot. to Dismiss CEF Pet. ("Resp't's Mem. to Dismiss CEF"), Case No. 19-cv-3443, ECF No. 26-1; Resp't's Mem. in Support of Mot. to Dismiss Greentech Pet. ("Resp't's Mem. to Dismiss Greentech"), Case No. 19-cv-3444, ECF No. 35-1.) Italy argues that this Court lacks jurisdiction over these petitions and that the awards are not enforceable, or, in the alternative, Italy requests a stay of these proceedings pending the outcome of Italy's appeals in the Svea Court. (*See* Resp't's Mem. to Dismiss CEF at 9–10; Resp't's Mem. to Dismiss Greentech at 8–9.)

As discussed herein, this Court is persuaded that a temporary stay is in the interests of judicial economy and international comity, especially given the significant legal issues that underlie the parties' dispute, which arise from, and relate to, European Union law. Therefore, Italy's motion to stay the instant action will be **GRANTED**, and this case will be **STAYED** pending further Order of this Court. A separate Order consistent with this Memorandum Opinion will follow.

## I.      BACKGROUND

In order to encourage the development of renewable energy sources, in the early 2000s, Italy established a number of incentive schemes to attract investment in the renewable energy sector. (*See* CEF Pet. ¶ 21; Greentech Pet. ¶ 24.) As relevant here,

the country "enact[ed] incentive schemes for photovoltaic [energy] plants known as *Conto Energia* Decrees." (CEF Pet. ¶ 21; *see also* Greentech Pet. ¶ 24.) Between January of 2010 and March of 2012, Petitioner CEF Energia (a company incorporated under the laws of the Kingdom of the Netherlands (*see* CEF Pet. ¶ 2)) invested in three photovoltaic projects, each of which "was granted a specific incentive tariff based on the *Conto Energia* decree in force at the time the plant began operating" (*id.* ¶ 23). Similarly, Petitioners NIP and NEE, which are incorporated under the laws of the Grand Duchy of Luxembourg (*see* Greentech Pet. ¶¶ 3, 4), invested in 52 photovoltaic projects in Italy between 2010 and 2013 (*see id.* ¶ 27), and Petitioner Greentech, a company incorporated under the laws of the Kingdom of Denmark (*see id.* ¶ 2), acquired a portfolio consisting of 75 photovoltaic projects in 2011, which grew to 82 projects by 2015 (*see id.* ¶ 28). As early as 2012, however, Italy allegedly began simultaneously "enacting a number of decrees and administrative fees that reduced the value of the incentive tariffs[.]" (CEF Pet. ¶ 24; *see also* Greentech Pet. ¶ 29.) According to Petitioners, "[t]he net effect of these new regulations drastically reduced the profitability and value of Petitioner[s'] investments." (CEF Pet. ¶ 25; Greentech Pet. ¶ 30.)

As a result of Italy's actions, Petitioners initiated arbitrations with Italy pursuant to Article 26 of the Energy Charter Treaty ("ECT"). (CEF Pet. ¶¶ 16, 26; Greentech Pet. ¶¶ 19, 31.) The ECT is a multilateral investment treaty with 54 signatories, the purpose of which is "to promote cross-border cooperation in the energy industry[.]" (Pet'rs' Response at 10.) Article 26 of the ECT specifically provides that an investor may submit "[d]isputes between a Contracting Party and an Investor of another

Contracting Party relating to an Investment of the latter in the Area of the former" to arbitration under the Stockholm Rules. (Resp't's Mem. to Dismiss CEF at 15 (quoting ECT Art. 26(4)); *see also generally* CEF Pet. ¶ 16; Greentech Pet. ¶ 19.) Each of Petitioners' countries of incorporation and Italy were parties to the ECT at all relevant times. (*See* CEF Pet. ¶¶ 8, 11; Greentech Pet. ¶¶ 10, 13, 14.)[2]

The respective arbitrations commenced in 2015 in Stockholm, Sweden under the Stockholm Rules; Greentech, NEE, and NIP in one arbitration, and CEF Energia in another. (*See* CEF Pet. ¶¶ 16, 17; Greentech Pet. ¶¶ 19, 20.) In 2018, while the arbitrations were ongoing, the Court of Justice of the European Union ("CJEU") issued a decision in *Slovak Republic v. Achmea B.V.*, Case C-284/16, 2018, in which the court found, *inter alia*, that intra-EU treaty arbitration provisions are invalid to the extent that they prohibit judicial review of EU law by EU courts. (*See* Pet'rs' Response at 12–13.) Italy then argued in the context of the arbitrations that the arbitration tribunals lacked jurisdiction (*see* CEF Pet. ¶ 27; Greentech Pet. ¶ 31; Pet'rs' Response at 13), but both tribunals ultimately rejected Italy's jurisdictional arguments and found that Italy had violated its obligations under the ECT (*see* CEF Pet. ¶¶ 28–31; Greentech Pet. ¶ 32). The tribunal that considered the CEF Energia dispute awarded the company €9.6 million (*see* CEF Pet. ¶ 20), and the other tribunal awarded Greentech €7.6 million and both NEE and NIP €4.5 million (*see* Greentech Pet. ¶ 33). All of the Petitioners were also awarded interest on their awards. (*See* CEF Pet. ¶ 20; Greentech Pet. ¶ 33.)

---

[2] Italy withdrew from the ECT in 2016, after the arbitrations at issue in the instant case had commenced. (*See* CEF Pet. ¶ 8.)

Thereafter, with respect to both arbitrations, Italy "commenced proceedings before the Svea Court [] in Sweden seeking to vacate the awards." (Pet'rs' Response at 15.)[3]  In the ensuing "set-aside" proceedings in the Svea Court—which remain pending—Italy is again pressing its argument that the arbitration tribunals lacked jurisdiction because the ECT's arbitration provision is invalid under EU law.  (*See id.* at 50.)  The Svea Court also specifically ruled that the arbitration awards cannot be enforced in Sweden in any event (*see id.* at 15),[4] after which Petitioners filed petitions to enforce the arbitral awards in state court in New York under the New York Convention (*see generally* CEF Pet. at 1 (filing made in Supreme Court of the State of New York, New York County); Greentech Pet. at 1 (same)).  Italy removed those cases to the U.S. District Court for the Southern District of New York ("SDNY") pursuant to the federal removal statute, 28 U.S.C. § 1441(d), given that SDNY was the federal district court "for the district and division embracing the place where [the state court] action[s] [were] pending[,]" *id.* at § 1441(d).  However, that federal court determined that venue was improper there because, under the federal venue statute, civil actions against foreign states, where no party is a citizen or resident of the United States and none of the events giving rise to the claim occurred in a judicial district in the United States, must be brought in the U.S. District Court for the District of Columbia.  (*See*

---

[3] Petitioners do not reference Italy's appeals to the Svea Court or the Svea Court's order with respect to nonenforcement of the awards in the petitions they filed in this Court, but they do discuss these facts in their responsive brief in opposition to Italy's motions to dismiss.

[4] The parties dispute whether the Svea Court's nonenforcement orders are a "suspension" of the awards within the meaning of the New York Convention (*see* Resp't's Mem. to Dismiss CEF at 24; Resp't's Mem. to Dismiss Greentech at 21; Pet'rs' Response at 35–39), but the parties agree that the awards cannot be enforced in Sweden, and that the Svea Court is currently adjudicating Italy's request that the arbitration awards be set aside.

Order, Case No. 19-cv-3443, ECF No. 13 (citing 28 U.S.C. § 1391(f)(4)); Order, Case No. 19-cv-3444, ECF No. 23 (same).)

Upon transfer to this Court, Italy filed a motion to dismiss CEF Energia's petition on December 7, 2019, and a motion to dismiss Greentech, NEE, and NIP's petition on December 11, 2019.  (*See* Resp't's Mot. to Dismiss CEF Pet., Case No. 19-cv-3443, ECF No. 26; Resp't's Mot. to Dismiss Greentech Pet., Case No. 19-cv-3444, ECF No. 35.)  This Court determined that both cases involve common questions of law and consolidated them, instructing the parties to file their remaining briefs in civil case number 19-cv-3443.  (*See* Minute Orders of Dec. 13, 2019, and Jan. 8, 2020.) Petitioners filed a consolidated response to Italy's motions to dismiss on February 6, 2020 (*see* Pet'rs' Response, ECF No. 35), and Italy filed a consolidated reply on March 4, 2020 (*see* Resp't's Reply, ECF No. 38).  In the meantime, the European Commission, on behalf of the European Union, filed an amicus brief on January 22, 2020 (*see* EU Amicus Brief, ECF No. 34), and Petitioners filed a response thereto on February 6, 2020 (*see* Pet'rs' Response to EU, ECF No. 36).

## II.      LEGAL STANDARD

In the United States, judicial enforcement of "arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought" occurs pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 201–208, which, as relevant here, codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as "the New York Convention"). *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting N.Y. Convention Art. I, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330

U.N.T.S. 3).  Under the New York Convention, a federal district court must recognize and enforce a foreign arbitral award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.  "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards[.]"  *Belize Soc. Dev.*, 668 F.3d at 727 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  However, "the Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'"  *Id.* (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)).

Applicable grounds for refusal to enforce an award under the Convention include that the agreement to arbitrate "is not valid . . . under the law of the country where the award was made[,]" N.Y. Convention Art. V(1)(a); that the "award . . . has been set aside or suspended by a competent authority of the country in which . . . that award was made[,]" *id.* at Art. V(1)(e); and/or that "recognition or enforcement of the award would be contrary to the public policy of that country[,]" *id.* at Art. V(2)(b).

## III.    DISCUSSION

In its motions to dismiss, Italy argues that this Court should refuse to enforce Petitioners' arbitral awards on myriad grounds.  For example, Italy contends that this Court lacks subject-matter jurisdiction over the petitions (*see* Resp't's Mem. to Dismiss CEF at 10; Resp't's Mem. to Dismiss Greentech at 8–9), and with respect to CEF Energia, Italy argues that this Court also lacks personal jurisdiction because service of process was improper under the Hague Convention (*see* Resp't's Mem. to Dismiss CEF

at 11).  Italy also maintains that the awards are not enforceable under the New York
Convention because they have been suspended by Sweden; because the ECT arbitration
agreement is not valid under Swedish or EU law; and because enforcement of the
awards would be contrary to public policy.  (*See* Resp't's Mem. to Dismiss CEF at 11–
12; Resp't's Mem. to Dismiss Greentech at 9.)  In the alternative, Italy argues that this
Court should stay this case in light of the ongoing proceedings in the Svea Court.  (*See*
Resp't's Mem. to Dismiss CEF at 12; Resp't's Mem. to Dismiss Greentech at 10.)
Petitioners respond that this Court has jurisdiction (*see* Pet'rs' Response at 16); that
service was properly effectuated (*see id.* at 22); and that there are no grounds for non-
recognition of the awards under the New York Convention (*see id.* at 26).  Petitioners
also contend that a stay is unwarranted.  (*See id.* at 45.)

     This Court finds that it has the authority to stay this matter notwithstanding the
outstanding jurisdictional issues, and it further concludes that a stay is warranted, as
explained below.  Therefore, the Court will stay this matter pending the Svea Court's
ruling, as Italy requests.

### A.    This Court Can Address Italy's Motion To Stay This Proceeding

     Courts ordinarily must assure themselves of jurisdiction *before* reaching the
merits of a case.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95
(1998).  However, "certain non-merits, nonjurisdictional issues may be addressed
preliminarily, because '[j]urisdiction is vital only if the court proposes to issue a
judgment on the merits.'"  *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342,
1348 (D.C. Cir. 2007) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549
U.S. 422, 431 (2007)).  Thus, a court may "bypass[] questions of subject-matter and

personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem*, 549 U.S. at 432 (2007).

Several judges in this district have considered the issue of whether a motion to stay can be addressed prior to resolving jurisdictional issues, and they have consistently held that, in the context of a dispute over the enforcement of a foreign arbitral award, a stay motion is the type of threshold, non-merits, nonjurisdictional question that can be determined initially. *See Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-CV-01148 (TSC), 2020 WL 417794, at *2 (D.D.C. Jan. 27, 2020); *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 38 (D.D.C. 2019); *Gretton Ltd. v. Republic of Uzbekistan*, No. 18-CV-1755 (JEB), 2019 WL 464793, at *2 (D.D.C. Feb. 6, 2019); *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 278 (D.D.C. 2016).  This Court agrees with that conclusion.

Thus, where, as here, the jurisdictional and merits arguments largely depend on the validity of the ECT's arbitration provision, which is being challenged both in the federal court and in a foreign proceeding, the question of whether or not the matter can be stayed can be addressed before the Court proceeds to evaluate any other complex threshold or jurisdictional issues. *See Hulley Enters.*, 211 F. Supp. 3d at 279–80 (finding that "[a] stay of proceedings in this [arbitral award enforcement] case is exactly the type of nonmerits action" that the "court may, for the sake of efficiency," address first).

## B.   A Stay Is Appropriate Here, Given The Ongoing Proceedings In Sweden

Italy argues that under Article VI of the New York Convention, a court may "stay a recognition decision where an annulment (or vacatur) application has been made

to a court . . . of the country in which, or under the law of which, that award was made." (Resp't's Mot. re: CEF Pet. at 45.) This Court is considering Italy's motion to stay "under its inherent powers[,]" rather than Article VI of the Convention, because the Court's own jurisdiction has yet to be established. *Novenergia II*, 2020 WL 417794, at *2 (citing *Hulley Enters.*, 211 F. Supp. 3d at 286); *see also Masdar Solar*, 397 F. Supp. 3d at 39. And there are well-established factors that a court must ponder when it exercises its inherent authority to stay any case, as explained below. The six factors for determining whether to stay a matter under Article VI of the New York Convention—as the Second Circuit articulated them in *Europcar Italia S.P.A. v. Maiellano Tours*, 156 F.3d 310 (2d Cir. 1998)—are also instructive, because the issue presented here is "whether to issue a stay when a foreign proceeding is ongoing in a foreign arbitral award matter." *Novenergia II*, 2020 WL 417794, at *2; *see also Gretton Ltd.*, 2019 WL 464793, at *3; *Hulley Enters.*, 211 F. Supp. 3d at 286–87.

    1.  <u>The Interests Of Judicial Economy Weigh In Favor Of This Court Exercising Its Inherent Powers To Stay This Case</u>

With respect to the Court's considerations when it determines whether or not to invoke its inherent powers to stay a case, the Supreme Court has explained that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev.*, 668 F.3d at 732–33 (quoting *Landis*, 299 U.S. at 254–55). In this regard, the party seeking a stay "must make out a clear case of hardship or inequity in being

10

required to go forward" if there is "even a fair possibility" that the stay would adversely affect the other party. *Landis*, 299 U.S. at 255. Moreover, an indefinite stay, such as the one requested here, "must be supported by 'a balanced finding that such need overrides the injury to the party being stayed.'" *Belize Soc. Dev.*, 668 F.3d at 732 (quoting *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971)). Be that as it may, district courts "have broad discretion" to stay a proceeding "pending the resolution of independent legal proceedings." *Nat'l Indus. for Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (citing *Landis*, 299 U.S. at 254).

This Court has no doubt that judicial economy favors a stay in this case. *See Novenergia II*, 2020 WL 417794, at *3; *Masdar Solar*, 397 F. Supp. 3d at 39. "Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *Novenergia II*, 2020 WL 417794, at *3 (quoting *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005)). Such interests are "especially strong where a [foreign] parallel proceeding is ongoing" and when "there is a possibility that the [arbitral] award will be set aside[,] since a court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Masdar Solar*, 397 F. Supp. 3d at 40 (internal quotation marks and citation omitted). Furthermore, "[a]lthough a stay would immediate[ly] delay the resolution of the parties' dispute, it would still likely be shorter than the possible delay that would occur if this Court were to confirm the award and the [Svea Court] were to then set it aside." *Id.* at 39 (quoting *Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea (Getma Int'l)*, 142 F. Supp. 3d 110, 114 (D.D.C. 2015)). If that scenario occurred, it would result in "more expensive litigation

11

involving more complex issues" which is "precisely the opposite of what arbitration attempts to promote: the swift and (relatively) simple disposition of litigation." *Id.* at 39–40.

This Court is also mindful of the fact that, under the circumstances presented here, "the outcome of the judicial proceedings in [the Svea Court] may affect this Court's determinations[.]" *Hulley Enters.*, 211 F. Supp. 3d at 284. Indeed, the underlying dispute in both the Svea Court and this Court involves the interplay of EU common law, its application to multilateral treaties such as the ECT, and the supremacy of EU law over Swedish law with respect to treaty arbitration provisions. This set of circumstances makes the Svea Court's decision directly relevant, "at a minimum, by virtue of the persuasive value of the reasoning in the [Swedish] decisions." *Id.*

It is also noteworthy that the issue of the viability of the ECT's arbitration provision arose relatively recently (in the wake of the CJEU's 2018 *Achmea* decision) and thus, the issue remains largely unsettled at this time. As such, the parties before the Court in this matter are not the only parties that are raising these arguments in the Svea Court. *See, e.g.*, *Novenergia II*, 2020 WL 417794, at *4 (staying case where Spain commenced set-aside proceedings in the Svea Court); *Foresight Luxembourg Solar 1 S.A.R.L. v. Kingdom of Spain*, No. 19 CIV. 3171 (ER), 2020 WL 1503192, at *2 (S.D.N.Y. Mar. 30, 2020) (transferring case to this district in which Spain has commenced set-aside proceedings in the Svea Court). Thus, given the ongoing and multifaceted nature of the various proceedings in Sweden, as well as the "persuasive value" of the Svea Court's reasoning, there is a significant interest in both judicial efficiency and international comity that warrants staying the instant case.

To the extent that Petitioners express any hardship due to a stay of the instant proceedings, they make only generalized comments about the potential impact of the additional delay in an enforcement decision from this Court.  (*See* Pet'rs' Response at 46 ("A stay at this point would prejudice Petitioners by further delaying their ability to obtain the compensation to which they are entitled.").)  This Court fully understands that Petitioners have been pursuing recompense from Italy since 2015 and that the resolution in the Svea Court may take one to two more years.  (*Id.* at 46–47.)  But it is not at all clear that proceeding with the instant litigation will necessarily lead to a faster resolution of the complex issues that must be determined prior to enforcing the awards, and the cost of litigating the central issues in two forums concurrently plainly outweighs such hardship, especially in light of the potential burden to Italy of "ultimately having to recover assets seized during this action should the [set-aside] proceeding[s] go its way." *Masdar Solar*, 397 F. Supp. 3d at 40.

2. The *Europcar* Factors, Too, Weigh In Favor Of Staying This Case

In briefing the motion to stay, the parties have primarily relied on arguments that pertain to the six *Europcar* factors, which technically apply only to a stay issued pursuant to the New York Convention, as mentioned, but are helpful in "weigh[ing] competing interests and maintain[ing] an even balance" between judicial economy and hardship, as the D.C. Circuit requires this Court to do when it exercises its inherent authority to stay a case. *Belize Soc. Dev.*, 668 F.3d at 732–33.  *Europcar* instructs the Court to consider six factors in considering a stay pursuant to Article VI the New York Convention:

(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

13

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
(4) the characteristics of the foreign proceedings . . . ;
(5) a balance of the possible hardships to the parties . . . ; and
(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Europcar*, 156 F.3d at 317–18.  In essence, "[t]hese factors 'balance the Convention's policy favoring confirmation of arbitral awards against the principle of international comity embraced by the Convention.'"  *Novenergia II*, 2020 WL 417794, at *4 (quoting *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 (11th Cir. 2004)).

The first two *Europcar* factors can be read together to pertain to the timing of foreign proceedings in relation to the general objective of arbitration, which is to resolve disputes expeditiously.  As this Court suggested above, the timing factor might appear to favor not staying the instant matter, given that the Svea Court proceedings could extend for one to two more years, but if this Court issued a ruling to enforce the arbitral awards and the Svea Court later found that the awards are invalid, "protracted and extensive litigation" would almost certainly then occur.  *Europcar*, 156 F.3d at 317. This Court also finds that set-aside proceedings (such as those that are occurring in the Svea Court) constitute an "integral" part of an arbitration, such that entering a stay in this enforcement action would "allow the arbitration process . . . to run its course." *Getma Int'l*, 142 F. Supp. 3d at 114.  Thus, these two factors both weigh slightly in favor of a stay.

The third *Europcar* factor "concerns the standard of review in the foreign proceedings."  *Novenergia II*, 2020 WL 417794, at *5.  The parties agree that the Svea

14

Court will apply Swedish law in considering whether to set aside the arbitral awards, but Petitioners argue that that standard is "substantially similar" to the New York Convention, which applies in the instant proceedings (*see* Pet'rs' Response at 49), while Italy contends that "the award[s] will receive more scrutiny" in the Svea Court (*see* Resp't's Reply at 26).  The parties' arguments appear to echo their jurisdictional and merits disputes regarding the scope of the applicable Swedish law, and it is unnecessary for the Court to determine the scope of the Svea Court's review in order to evaluate this stay factor.  Regardless—*i.e.,* even where it is unclear whether greater scrutiny will apply in the case that is pending in the foreign court—"the [mere] possibility that the [reviewing court] will set aside the award, 'weighs mildly in favor of [granting a] stay." *Getma Int'l*, 142 F. Supp. 3d at 116; *see also Novenergia II*, 2020 WL 417794, at *5.[5]

The fourth *Europcar* factor requires an evaluation of the characteristics of the foreign proceedings—including whether the respondent is seeking to enforce or set aside an award, whether the foreign proceedings were initiated before the underlying proceeding, whether the party now seeking enforcement initiated the foreign proceedings, and whether the foreign proceedings were "initiated under circumstances indicating an intent to hinder or delay resolution of the dispute[.]"  *Europcar*, 156 F.3d at 318.  Italy has asked the Svea Court to set aside the arbitral awards and is not seeking to enforce the awards in this Court, so *Europcar* instructs that these considerations weigh in Petitioners' favor and, thus, against staying the case.  *See id.*  However, Italy

---

[5] Petitioners' additional observation that Italy is, in effect, asking the Svea Court for a reconsideration of jurisdictional "issues that both arbitral tribunals already decided"—a circumstance that generally weighs against a stay of the instant case (*see* Pet'rs' Response at 50)—is of no moment.  That same request for reconsideration is at issue here, too, because "issues necessarily have to be 'relitigated' in an appellate-like proceeding."  *Getma Int'l*, 142 F. Supp. 3d at 117.

initiated the set-aside proceedings in the Svea Court *before* Petitioners sought to enforce the awards here, which raises significant concerns of international comity. *See Getma Int'l*, 142 F. Supp. 3d at 116–17 (collecting cases). Italy also does not appear to be motivated by an intent to delay—that is, Italy has consistently represented that it believes the arbitration tribunals lacked jurisdiction based on the CJEU's *Achmea* decision, and its efforts to pursue the challenge in set-aside proceedings is consistent with that belief, despite Petitioners' arguments to the contrary. (*See* Pet'rs' Response at 50.) "Thus, while some aspects of the status and characteristics of the foreign proceedings weigh against a stay, in totality, they weigh in favor of a stay." *Novenergia II*, 2020 WL 417794, at *5.

Finally, the fifth and sixth *Europcar* factors require this Court to balance the parties' relative hardships if the stay issues and if it does not, and the Court must determine whether any other factors shift the balance one way or another in favor of a stay. As this Court explained above, the balance of hardships weighs decidedly in favor of a stay. And the additional interest in international comity, particularly with respect to the importance of the issues at stake here to the European Union (*see* EU Amicus Brief at 7–8), also weighs in favor of a stay. Indeed, another court in this district recently considered the propriety of a stay on nearly identical facts and reached the unassailable conclusion that, on balance, the interests of international comity warrant a stay, because "the Swedish proceedings were initiated before this action, the Swedish court has already acted to prohibit enforcement of the arbitral award, and the issue is of importance to the EU and better suited for initial review in their courts." *Novenergia II*, 2020 WL 417794, at *4.

Thus, this Court finds that Italy has demonstrated a "pressing need" for a stay of the instant proceedings, and that both the general interests of judicial economy that arise when the Court relies upon its own inherent authority to manage its docket and the *Europa* factors weigh in favor of staying this case.

### C.      This Court Will Not Require Italy To Post Security

Petitioners argue that if this Court does grant a stay, it should "condition the stay on Italy's posting of security" pursuant to Article VI of the New York Convention. (Pet'rs' Response at 52.)  But this Court has not yet determined whether it has jurisdiction; therefore, it is not clear that it has the authority to order the posting of security pursuant to the Convention.  Moreover, "courts in this Circuit generally have not required foreign sovereigns to post security because they are 'presumably . . . solvent and will comply with legitimate orders issued by courts in this country or in [their home jurisdiction.]'"  *Novenergia II*, 2020 WL 417794, at *6 (quoting *DRC, Inc. v. Republic of Honduras*, 774 F. Supp. 2d 66, 76 (D.D.C. 2011)).

Nevertheless, consistent with the D.C. Circuit's clear direction that any stay of litigation that district courts authorize should be reasonable, and should be limited accordingly, *see Belize Soc. Dev.*, 668 F.3d at 732, this Court will order regular status updates from the parties regarding the ongoing proceedings in the Svea Court, so as to permit the Court to evaluate whether and to what extent the instant proceedings should resume, *see, e.g.*, *id.* (suggesting that a stay is reasonable where "the stay order includes [a] provision for status updates or further review").

17

## IV.    CONCLUSION

Given the ongoing set-aside proceedings that are taking place in Sweden (the primary jurisdiction of the parties' arbitrations) and the significant interests in judicial economy and international comity that weigh in favor of staying this case, Respondent's motion to stay the instant case will be **GRANTED**, and the instant case will be **STAYED** until further order of the Court.  As set forth in the Order that accompanies this Memorandum Opinion, throughout the pendency of the stay, the parties shall provide the Court with periodic updates regarding the status of the set-aside matter that is working its way through the Svea Court, and they shall notify the Court of the Svea Court's ruling within three business days of its issuance.


DATE:  July 23, 2020                          *Ketanji Brown Jackson*
                                              KETANJI BROWN JACKSON
                                              United States District Judge

18